USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOUIS RODRIGUEZ,

               Petitioner,

-against-

MICHAEL CAPRA, SUPERINTENDENT

               Respondent.

1:20-cv-3141 (MKV)

OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

---

MARY KAY VYSKOCIL, United States District Judge:

Louis Rodriguez petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction following a jury trial in the New York State Supreme Court. [ECF No. 2] ("Petition"). Rodriguez seeks *habeas* relief, contending that: (1) he was denied the right to a fair trial due to the state court's refusal to replace a biased juror; (2) he was denied due process due to ineffective assistance of trial counsel; (3) he was denied due process due to fabrication of evidence that led to his conviction; and (4) he is actually innocent of certain charges underlying his sentence. For the reasons herein, the petition is DENIED.

## BACKGROUND

The following facts are adduced from the petition, Petitioner's application ("App.") and his memorandum in support of the petition ("Memo").[1]

Petitioner was taken into custody on August 23, 2009 following a melee earlier that day during which Petitioner had allegedly shot Salvador Moran in the neck and shot and killed Eric Pagan. *See* App. at 2, 10. Petitioner was indicted by two grand juries, first on charges relating to

---

[1] Petitioner filed a petition for a writ of *habeas corpus* that attached an October 5, 2016 New York Supreme Court decision denying a motion to vacate judgment ("Trial Op."), a certificate of the Appellate Division dated March 17, 2017, denying permission to appeal that trial court ruling, a 28-page "application for a writ of *habeas corpus*," and a separate 30-page "memorandum of law." [ECF No. 2]. Petitioner filed the documents as a single, continuous docket entry. The Court cites to the separate papers in the Petition by the internal pagination of the documents. While it appears to be a complete document, the petition is paginated only with even numbers.

the shootings and later on drug charges. The charges from the second indictment were consolidated with the charges related to the shootings and were tried together.

In July 2011, Petitioner was convicted by a New York State jury of murder in the second degree, attempted murder in the second degree, two counts of assault in the first degree, two counts of criminal possession of a weapon in the second degree, two counts of criminal possession of a controlled substance in the third degree, and two counts of criminal possession of a controlled substance with intent to sell. App. at 1, 13; Trial Op. at 2. Petitioner was sentenced to a prison term of eighty years to life. App. at 1.

Mr. Rodriguez, through counsel, filed a direct appeal of the trial court's judgments of conviction and sentence to the Appellate Division, First Department. App. at 15–18. Petitioner argued that the trial court wrongfully refused to discharge Juror 8 prior to verdict. App. at 15; Memo at 1. According to the Petitioner, the juror had informed the trial court and counsel that he received a hang-up call during the trial that he initially thought was from Mr. Rodriguez's wife. App. at 15–18; Memo at 1–2. In addition, Petitioner challenged his sentence arguing that the prison terms for his homicide-related conviction and possession convictions should not have been set to run consecutively with the terms for his other convictions.[2] App. at 16. The New York Appellate Division, First Department, affirmed the trial court's decision, finding that the juror had assured the court that the incident did not affect his ability to remain fair and impartial, but modified Petitioner's sentence so that the sentences for challenged convictions would run concurrently. App. at 16–17. Petitioner's application for leave to appeal the Appellate Division's decision was denied. [ECF No. 18 Ex. E].

---

[2] Plaintiff does not raise this challenge to his conviction in the current Petition before this Court. *See* App. at 16 n.4.

Thereafter, Petitioner filed a motion for a writ of *error coram nobis*, in the First Department, arguing ineffective assistance of counsel. App. at 18. The Appellate Division denied the writ in an unpublished opinion and the Court of Appeals denied leave to appeal. App. at 18. The Court of Appeals denied Petitioner's motion for reconsideration. [ECF No. 18 Ex. I].

While the writ was pending on appeal, Petitioner also filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law Section 440.10.³ App. at 18. Petitioner premised this motion on 1) ineffective assistance of counsel, 2) false evidence, and 3) actual innocence. App. at 18–19. By opinion and order dated October 5, 2016 [ECF Nos. 2, 18 Ex. P] ("Trial Op."), the trial judge (Hon. Robert Mandelbaum) denied the motion to vacate. Specifically, he ruled that "[v]iewed in totality and in the face of strong evidence against defendant, counsel provided meaningful representation throughout the nearly month-long trial . . . ." Trial Op. at 7. He went on to reject Petitioner's argument that his sentence was unlawful, and that his claim of actual innocence was sufficient to warrant relief. Trial Op. at 8. The court further ruled that Petitioner's suggestion that the verdict was based on legally insufficient evidence must be raised on direct appeal rather than a motion to vacate the judgment. Trial Op. at 8.

Petitioner filed an application for leave to appeal the denial of his motion to vacate the judgment, which was denied. [ECF No. 2 at Attachment 3]; App. at 23. Concurrently, Petitioner filed a motion for leave to renew his CPL § 440.10 motion pursuant to CPL § 2221(e) in the New York Supreme Court, which was also denied. App. at 23. Petitioner then sought leave to appeal that denial which was also denied. App. at 23.

---

³ CPL § 440.10 permits a court to vacate judgment for an enumerated list of reasons, including that "[m]aterial evidence adduced at a trial resulting in the judgment was false" or "procured in violation of the defendant's rights."

3

Thereafter, Petitioner filed this petition *pro se*. Respondent Michael Capra[4] moved to dismiss the petition on the grounds that the petition was time-barred pursuant to the one-year statute of limitations for *habeas* petitions in 28 U.S.C. § 2244(d). [ECF No. 9]. In response, Petitioner filed a letter detailing reasons why his petition was timely. [ECF No. 13]. Upon receipt of that letter, Respondent withdrew his motion to dismiss, and instead answered and opposed the petition on its merits. [ECF Nos. 18, 19]. Respondent attached to its answer excerpts of the trial and appellate record in the state courts, *see* ECF No. 19, some but not all of which were part of Petitioner's initial filing.

## **LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "a district court may grant relief only where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.' " *Paige v. Eckert*, 850 F. App'x 59, 61 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 450, 211 L. Ed. 2d 265 (2021) (quoting 28 U.S.C. § 2254(d)). A finding of an unreasonable application of the law requires a showing that the state court unreasonably applied the correct governing law to the facts of the particular case. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is "contrary to" clearly established Federal law when the court applies a rule that is "diametrically different, opposite in character or nature, or mutually opposed" to the governing law set forth in Supreme Court cases. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision shall be presumed to be correct, and the petitioner carries the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id*. "The

---

[4] Mr. Capra is named in his capacity as the supervisor of Sing Sing Correctional Facility, where Petitioner is currently incarcerated. [ECF No. 18 at 2].

question under [the] AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Garlick v. Lee*, 1 F.4th 122, 129 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1189 (2022).

Under Section 2254(d)(2) of the AEDPA, when reviewing whether a state court's decision was based on an "unreasonable determination of the facts," a federal *habeas* court should "accord the state trial court substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015); *see also Bowman v. Lee*, 641 F. App'x 51, 54 (2d Cir. 2016). Under Section 2254(e)(1), a state court's factual findings are presumed to be correct. *Schriro*, 550 U.S. at 474 (citing 28 U.S.C. § 2254(e)(1)). This presumption can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Schriro*, 550 U.S. at 474.

## DISCUSSION

### I. Timeliness

As a threshold matter, under 28 U.S.C. § 2244, as amended by the AEDPA, a petitioner must file his *habeas* petition within one year of the date his conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "Section 2244(d)(2)'s tolling provision *excludes time* during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). The Second Circuit has also held that courts may equitably toll the limitations period in "rare and exceptional circumstance[s]." *Id*. "In addition, the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Id*.

Initially, Respondent moved to dismiss the petition on the grounds that the petition was time-barred pursuant to the one-year statute of limitations. [ECF No. 9]. Petitioner, however, filed

5

a letter detailing reasons why his petition was timely. [ECF No. 13]. Petitioner's letter provided proof of the numerous requests that he had made to the Clerk of Court in the Appellate Division inquiring about the status of his then-pending application to appeal. [ECF No. 13]. Specifically, Petitioner sent several letters to the Appellate Division from August 2017 through January 2020 seeking the status of his application, emphasizing the urgency of the matter. [ECF No. 13]. Moreover, Petitioner contended that the Appellate Division did not inform him that his application for appeal had been denied until January 2020. [ECF No. 13]. Petitioner filed this *habeas* petition within four months of that notice. [ECF No. 1]. Following Petitioner's letter, Respondent withdrew his motion to dismiss, and instead answered and opposed the petition on the merits. [ECF Nos. 18, 19]. Although Respondent no longer contends that the petition was untimely, the Court recognizes that Petitioner acted with "reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17. As such, the petition is not time barred under 28 U.S.C. § 2244.

## II. Exhaustion

As a second threshold matter, exhaustion of state remedies is a condition precedent to federal *habeas* relief. 28 U.S.C. § 2254(b)(1)(A). A petitioner satisfies the exhaustion requirement by fairly presenting each of his claims to the highest state court available to him before presenting them to the federal court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To fairly present a claim, a petitioner must identify both the facts that entitle him to relief, *Picard v. Connor*, 404 U.S. 270, 276–77 (1971), and the federal constitutional basis for the claim, *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995), thereby giving the state courts "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Here, Petitioner's *habeas* claims have been exhausted. First, Petitioner appealed the trial court's judgments of conviction and sentence to the Appellate Division, First Department, arguing

that the trial court wrongfully refused to discharge Juror 8 prior to verdict. App. at 15–18. The Appellate Division affirmed the trial court's decision, App. at 16–17, and denied Petitioner's application for leave to appeal the Appellate Division's decision. [ECF No. 18 Ex. E].

Second, Petitioner filed a motion for a writ of *error coram nobis*, in the First Department, arguing ineffective assistance of counsel. App. at 18. The Appellate Division denied the writ in an unpublished opinion and the Court of Appeals denied leave to appeal. App. at 18. The Court of Appeals subsequently denied Petitioner's motion for reconsideration. [ECF No. 18 Ex. I].

Finally, Petitioner filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law Section 440.10; App. at 18. Petitioner premised that motion on claims of 1) ineffective assistance of counsel, 2) false evidence, and 3) actual innocence. App. at 18–19. The trial judge denied Petitioner's motion to vacate, Trial Op. at 7–8. Petitioner's applications for leave to appeal the denial of his motion to vacate and leave to renew his CPL § 440.10 were both denied. [ECF No. 2 at Attachment 3]; App. at 23.

Accordingly, Petitioner satisfies the exhaustion requirement because he "fairly present[ed] each of his claims to the highest state court available to him" before filing his federal *habeas* action. *Baldwin*, 541 U.S. at 29.

## III.   Antiterrorism and Effective Death Penalty Act

### A.   Impartial Jury Claim

Petitioner's claim that he was denied the right to a trial by an impartial jury is premised on the trial court's refusal to discharge Juror 8. Petitioner argues that Juror 8 exhibited "incurable bias" after he received a hang-up phone call at night from someone whom the juror initially assumed was Petitioner's wife. App. At 15; Memo at 19. After inquiring of the juror, the trial court determined that Juror 8 would be able to remain fair and impartial. The Appellate Division affirmed, finding the trial court's decision was based on a thorough colloquy with the juror, who

7

had assured the court that he could remain impartial, and that the trial court had "properly concluded that the juror was not grossly unqualified" to serve. *People v. Rodriguez*, 118 A.D.3d 451, 452, 987 N.Y.S.2d 347 (1st Dep't 2014). This Court agrees.

Under CPL 270.35(1), if a court finds that a juror is "grossly unqualified" to serve in a case, the court "must discharge" such juror. "The 'grossly unqualified' standard is 'satisfied only when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict.' " *People v. Arena*, 70 A.D.3d 1044, 1045, 895 N.Y.S.2d 514 (2d Dep't 2010) (quoting *People v. Buford*, 69 N.Y.2d 290, 514 N.Y.S.2d 191, 196, 506 N.E.2d 901 (N.Y. 1987)). A finding that a juror is grossly unqualified cannot be made merely because the court believes a juror's "equivocal responses" indicate possible bias. *Buford*, 514 N.Y.S.2d at 196. "Instead, [the court] must be convinced that the juror's knowledge will prevent her from rendering an impartial verdict." *Id.*

Upon review of the matter, this Court sees no reason to disturb the trial court's finding that Juror 8 was not biased. As required by law, the trial court questioned the "allegedly unqualified juror in the presence of attorneys" and "conducted a probing and tactful inquiry" into the facts surrounding the incident. *People v. Arena*, 70 A.D.3d 1044, 1045, 895 N.Y.S.2d 514 (2d Dep't 2010). After an in-depth discussion regarding the hang-up phone call and the circumstances surrounding it, the court asked the juror if he could give his "unequivocal assurance that he would remain fair and impartial" to which the juror sufficiently responded "yes." Memo at 6; [ECF No. 18 Ex. A at 39–48]; *People v. Harris*, 99 N.Y.2d 202, 212–13, 783 N.E.2d 502 (N.Y. 2002); *see also Rivera v. Collado*, 19-cv-11403 (RWL), 2021 WL 603047, at *14 (S.D.N.Y. Feb. 16, 2021). Petitioner's argument that the juror had initially expressed uncertainty when asked about his ability to be impartial does not give rise to an inference that the juror is "grossly unqualified." *See e.g.*, *Harris*, 99 N.Y.2d 202 at 13 ("there is no indication that the juror's concern for her personal safety

rendered her grossly unqualified to serve"). While these facts may indicate "possible bias," they are not sufficient to meet the burden of convincing the court that the juror is grossly unqualified. *See Buford*, 514 N.Y.S.2d at 196. Thus, the trial court did not err in finding that Juror 8 was qualified to serve. Petitioner has failed to prove by "clear and convincing evidence" that he is entitled to *habeas* relief on this ground.

### B. Ineffective Assistance of Counsel

In his CPL 440.10 motion to vacate his judgment, Petitioner contended that his counsel was ineffective for 1) failing to advise petitioner of his right to testify; 2) failing to advise him about the defenses of justification and temporary lawful possession; 3) declining to "move to sever drug charges" from petitioner's homicide-related charges and 4) neglecting to call a police officer to testify for the defense. *See* Memo at 16–21. The trial court denied that motion in a detailed opinion, *see* Trial Op. [ECF No. 2 Attachment 1, & ECF Nos. 18-16], and the Appellate Division denied leave to appeal. [ECF No. 2 Attachment 2].

Petitioner now challenges the presumptive correctness of that decision, *see* Memo at 8, arguing that the denial was "based on an unreasonable determination of the facts." Memo at 16. In particular, Petitioner argues that the state court's determination that counsel did advise him about his right to testify was mislaid where an evidentiary hearing should have been held. Memo at 16–19. Petitioner further argues that the state court's finding that the "decision not to oppose consolidation" of the shootings and drug charges against him was made on the grounds of trial strategy, Trial Op. at 5–7, also should have been made at an evidentiary hearing. This Court finds that the state court's decisions were not based on an unreasonable determination of the facts.

In order to establish a claim of ineffective assistance, "a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To

9

show deficient performance, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Rodgers v. United States*, 851 F. App'x 261, 262 (2d Cir. 2021) (citing *Strickland*, 466 U.S. at 697). In addition, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the defendant must overcome the presumption that counsel's actions could not be considered "sound trial strategy." *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

The only evidence Petitioner provided at the state court level to support his argument that counsel had not advised him of his right to testify were two affidavits, one from his mother and another from his sister. Memo at 17. However, as the trial court noted, Petitioner's mother and sister admitted they were not present at every conversation between petitioner and counsel. Trial Op. at 3 [ECF No. 2 Attachment 1]. Moreover, his counsel submitted a sworn affidavit attesting that he had discussed with petitioner his right to testify and even referenced this right in oral argument. *Id.* The trial judge concluded that "Defendant's allegations that counsel never told him that he had a right to testify and never advised him of certain defenses are made solely by him, and are unsupported by any other affidavit or evidence, and under all the circumstances attending the case, there is no reasonable possibility that the allegations are true . . . ." Trial Op. at 3.

Petitioner's argument that the trial court should have held an evidentiary hearing to resolve the issue is unavailing. When there are "mixed questions of law and fact" before the Court, it generally would be appropriate to hold an evidentiary hearing. 28 U.S.C. § 2254(e)(2); *see e.g.*, *Yiu v. Keane*, 99 Civ 12103 (RMB), 2003 WL 22047852, at *5 (S.D.N.Y. Sept. 3, 2003). However, the evidence here was not silent on whether counsel had advised Plaintiff on the right to testify. Beyond the affidavit of Petitioner's counsel, the court also noted that the Petitioner was present at a lengthy hearing regarding issues to be resolved if Petitioner *did* testify. Trial Op. at 3. It strains

10

credulity to believe that Petitioner did not understand that he enjoyed a right to testify when he was present in court during a discussion about that exact right. Trial Op. at 3.

Similarly, trial counsel provided an affidavit that the determination not to oppose consolidation of the charges was not based "on financial considerations," as Petitioner argued. Memo at 19. The trial court directly rejected Petitioner's argument, taking into consideration an affidavit by Petitioner's trial counsel, and the fact that consolidation may have been a favorable trial strategy. *See* Trial Op. at 5. The trial judge noted that any severance motion would have been unlikely to succeed. *See* Trial Op. at 6. *See People v. Stultz*, 2 N.Y.3d 277, 287 (2004) ("A defendant is not denied effective assistance of trial counsel merely because counsel does not make a motion or argument that has little or no chance of success."). The Appellate Division subsequently found that Petitioner presented no question of law or fact requiring review and denied leave to appeal. [ECF No. 2 Attachment 2].

The law simply does not support Petitioner's contention that he was entitled to an evidentiary hearing on his unsupported claims of ineffective assistance. *See People v. Brown*, 56 N.Y.2d 242, 247 (1982) (to "require a hearing to investigate every speculative and unsupported allegation . . . would unquestionably impose an undue burden upon both the District Attorney and the judiciary."). Petitioner provides no further support, beyond the memorandum of law that rehashes the state court case, for his propositions that his counsel was ineffective. Thus, this Court defers to the trial court's reasonable determination of facts with respect to the ineffective assistance of counsel claims.

### C. Prosecutorial Misconduct

Petitioner next argues that he "was convicted as a result of false evidence, perjury, and prosecutorial misconduct in connection with a *Brady* violation."[5] Memo at 24. In particular, Petitioner alleges that the "[p]rosecution backdated [a] police report" to August 26, 2009 and "used perjured police testimony" to "suggest they discovered . . . narcotics and [a] trapdoor in petitioner's vehicle within three days of the shooting." Memo at 25–26.

Petitioner was indicted on the shooting charges in September 2009. *See* Memo at 26. A second grand jury then indicted Petitioner on narcotics charges in December 2009. Petitioner's theory is that if the drugs had been discovered in August following the shootings, the first grand jury would also have heard the narcotics charges against him. *See* Memo at 26. For that reason, Petitioner speculates that the search of the vehicle actually occurred months after the shootings, and his indictment on drug charges was therefore unsupported at the time. *See* Memo at 24-26.

This exact issue was raised in Petitioner's previous CPL 440.10 motion and rejected by the state court. *See* Trial Op. [ECF No. 2 Attachment 2]; [ECF No. 18 Ex. P at 5] ( "defendant's unsupported claims of prosecutorial misconduct and suppression of exculpatory evidence on the basis that the People forged the police laboratory analysis report and suborned perjury about the timing of the execution of the search warrant are made solely by him and under all the circumstances attending the case, there is no reasonable possibility that the allegations are true."). That determination is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Petitioner must rebut that presumption by clear and convincing evidence. *Overton v. Newton*, 295 F.3d 270, 275 (2d Cir. 2002).

---

[5] *Brady* refers to the seminal Supreme Court case *Brady v. Maryland*, 373 U.S. 83 (1963), which held that prosecutorial suppression of favorable, material evidence violates due process.

Petitioner does not carry his burden. While he alleges that the prosecution backdated a police report, Petitioner provides no evidence in support of that accusation. *See, e.g.*, *Skeete v. New York*, No. 1:03-CV-2903, 2003 U.S. Dist. LEXIS 20675, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) (noting that "vague, conclusory and unsupported claims do not advance a viable claim for *habeas corpus* relief."). The evidence (consisting of a lab report analyzing the narcotics discovered during the search) was considered by the state court, *see* Trial Op. [ECF No. 2 Attachment 2]; [ECF No. 18 Ex. P at 5], and reflects that the drugs were discovered on or before August 27, 2009. [ECF No. 18 Ex. N]. The analysis was not complete until September 17, 2009, after Petitioner had been indicted on the shootings. *See id.*; Memo at 26. Thus, it follows that the initial grand jury could not have heard the narcotics charges, necessitating a subsequent grand jury indictment at a later date. Absent contrary evidence by the Petitioner, the Court will not disturb that logical conclusion.

### D. Actual Innocence

Finally, Petitioner claims that he is actually innocent of the charged crimes which relate to the shootings.[6] *See* Memo at 21-24, 26-28. Specifically, he challenges his convictions for murder, anticipated murder, and assault. Petitioner states that the state court decision rejecting his innocence claims were based on unreasonable determinations of the facts. *See* Memo at 22–24, 27.

The Court notes, as a threshold matter, that the Supreme Court has "not resolved whether a prisoner may be entitled to *habeas* relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Petitioner seeks to avail himself of *habeas* relief pursuant to 28 U.S.C. § 2254(d)(2). Even if the Court were to agree that § 2254(d)(2) provides

---

[6] Petitioner does not contend that he is actually innocent of the narcotics charges on which he was convicted. *See* Memo at 28-29 (arguing only that he is innocent of the shootings).

13

independent grounds for an actual innocence *habeas* claim—a proposition on which the Court takes no position—Petitioner's claim would nonetheless fail.

As Petitioner himself recognizes, *see* Memo at 27–28 [ECF No. 2 Attachment 4], the standard for an actual innocence claim is undoubtedly high: a petitioner must present "new[,] reliable evidence"—such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—that was not presented at trial, and that so strongly establishes his innocence that a court "cannot have confidence in the outcome of the trial." *Schlup v. Delo*, 513 U.S. 298, 316, 324 (1995). And, Petitioner concedes, *see* Memo at 27, the defendant bears the burden to establish actual (as opposed to legal) innocence by "clear and convincing" evidence. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

The state court rejected Petitioner's claim of actual innocence on his CPL 440.10 motion. Memo at 27. Plaintiff argues that the state court unreasonably relied upon two pieces of evidence: first, a video purporting to show Mr. Rodriguez as the shooter in question, Memo at 28–29; and second a "bloody white t-shirt" found in his car, which Petitioner believes contained evidence of blood belonging to others involved in the shootings. Memo at 28–29 n.3. However, Petitioner does not assert any new evidence that disturbs the Court's confidence in the outcome of the trial.

With respect to the surveillance video, Petitioner apparently takes umbrage at the "continuity of the video" because it had "been rewound, fast forwarded in multiple speeds, played and rewound again during the creation of the video," causing a "flawed extraction." Memo at 28–29. Petitioner contends that this means that it could not show that he "possess[ed] a firearm." However, Petitioner stipulated at trial that the extraction resulted in explainable discrepancies. Trial Transcript [ECF No. 18 Ex. X] at 727-28:19-5. And Petitioner's own motion to the trial court flagging the issue does not say, as Petitioner does now, that "the surveillance . . . illustrate[s] that [he] did not possess a firearm." *See* Petitioner's Motion to Renew [ECF No. 18 Ex. S] at 4–

5.  In short, the explained extraction issues do not now support Petitioner's position that the video does *not* show him to be the shooter.

Similarly, Petitioner appears to argue that the t-shirt found in his car belonged to the actual shooter, but not to him. *See* Memo at 28–29 n.3. Petitioner argues that, if tested, it would reveal that the blood on the shirt belongs only to the victim and another individual. *Id.* But the shirt in question *was* tested, and the report concluded that the victim's blood was not on the shirt, nor was the blood of a different person whom Petitioner apparently contended was the actual shooter in question. *See* Trial Op. at 8 [ECF Nos. 2 and 18 Ex. O] (denying actual innocence claim and discussing DNA testing of shirt). As the state court held in its denial of Petitioner's CPL 440.10 motion, the bloody t-shirt could not establish Petitioner's actual innocence. *Id.* Petitioner does not present any new evidence that erodes confidence in the trial court's decision. Petitioner's actual innocence claim must, therefore, fail.

## CONCLUSION

For the foregoing reasons, Petitioner's *habeas* petition is denied in its entirety. Because Petitioner has not demonstrated a basis for the federal *habeas* relief he seeks under 28 U.S.C. § 2254, the Court does not grant a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) (a "certificate of appealability may issue [in a *habeas corpus* proceeding] only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Canteen v. Smith*, 555 F. Supp. 2d 407, 418 (S.D.N.Y. 2008) (denying Section 2254 *habeas* petition and declining to issue a certificate of appealability). The Clerk of the Court respectfully is requested to enter judgment denying the *habeas* petition and to close the case.

**SO ORDERED.**

Date:  September 29, 2023                                    MARY KAY VYSKOCIL
       New York, NY                                          United States District Judge